## HEMINGWAY MANUF'G CO. v. COUNCIL BLUFFS CANNING CO.

### (Circuit Court, S. D. Iowa, C. D.   May 11, 1893.)

DAMAGES—EXECUTORY CONTRACT OF SALE—BREACH BY PURCHASER.

Defendant ordered of plaintiff two machines, which plaintiff had to manufacture, and for which defendant was to pay the usual price, which did not change after the order was given. Before the machines were made, defendant countermanded the order; but plaintiff made and tendered the machines, which were of the usual make, and not specially designed, and defendant refused to receive them. The machines were covered by a patent owned by plaintiff, but there were other machines used for the same purpose. *Held*, that plaintiff was entitled to nominal damages only for the breach of the contract.

This was an action by the Hemingway Manufacturing Company against the Council Bluffs Canning Company to recover damages for breach of a contract of sale of machines by plaintiff to defendant.

### Finding of Facts.

The above case having been submitted to the court, a jury being waived, the court makes the following findings of facts:

(1) The plaintiff was, when this suit was brought, and is now, a corporation created under the laws of the state of New York, and the defendant was, when the suit was brought, and is now, a corporation created under the laws of the state of Iowa.

(2) That on the 21st day of April, 1888, the plaintiff and defendant entered into a contract in writing at Chicago, Ill., which is worded as follows:

"Hemingway Manufacturing Co., Patentees and Manufacturers of Corn Cookers and Special Machinery for Canners' Use. Syracuse, N. Y.

"Memorandum of agreement made this 21st day of April, A. D. 1888, by and between the Hemingway Company, a body corporate, organized under the laws of the state of New York, with its principal business office at Syracuse, New York, party of the first part, and Council Bluffs Canning Co., of Council Bluffs, Iowa, party of the second part, witnesseth, that on this 21st day of April, 1888, the said party of the first part agrees to sell to the said party of the second part, delivered on cars at Syracuse, N. Y., six No. 2 patent corn cookers, manufactured by said party of the first part, and the said party of the second part agrees to purchase the said number 2 cookers, and to pay for the same the sum of three thousand dollars, as follows: Net cash upon delivery of railroad receipt showing shipment of same. There is also to be furnished with said cookers, by parties of first part, six of Huston and Dale automatic feeders, free of charge to parties of second part, with the exceptions of freight charges from Beatrice, Neb., to point of delivery. Council Bluffs Canning Co.

"D. W. Archer, Sec'y.

"Hemingway Mfg. Co.

"H. C. Hemingway, Manager.

"[Indorsed]   D. W. Archer, Council Bluffs, Iowa.

"Council Bluffs Canning Co., Council Bluffs, Iowa.

"June 15, 1888, —— ready to ship."

(3) That on April 23, 1888, the plaintiff company, at Syracuse, N. Y., placed orders with third parties for the manufacture and delivery to plaintiff of the several parts composing six No. 2 corn cookers, of the description called for in said contracts, and on the same date sent an order to Huston & Dale, at Beatrice, Neb., for six automatic feeders, as called for in said contract.

(4) That it was the custom of the plaintiff company, in filling contracts for the sale of the corn cookers, to cause the several parts of the cookers to be made by third parties, and to be delivered to the plaintiff company, the same being put together in working order by plaintiff.

(5) That on April 25, 1888, the defendant company, through D. W. Archer, its secretary, sent to the plaintiff company, at Syracuse, N. Y., the following telegram, which was received on the day of its date by plaintiff:

"Chicago, Ill., April 25, 1888.

"To Hemingway & Company, Syracuse, New York: Don't order corn cookers made until you hear from us. See letter. D. W. Archer."

And on the same day the following letter was written to the plaintiff company, and received in due course of mail:

"Ex. B.                        (Copy.)                        Ex. No. 2.

"Chicago, Ill., Apl. 25, 1888.

"Mess. Hemingway & Co., Syracuse, N. Y.—Dear Sirs: Have wired you: 'Don't order corn cookers made until you hear from us. See letter.' This I now confirm. I have not heard from M. & S. since seeing your Mr. H. last Saturday, and do not know what they (M. & S.) will actually do; but your Mr. H. and I both agreed last Saturday, before the order was placed with you, that they would not ship, but cancel the order, as I had notified them in due time. I trust, in a very few days, to notify you that we have had the matter cleared up. If M. & S. force the machines on us, you will have to cancel the order for (10) ten steamers.

"Yours, truly,                        D. W. Archer, Sec'y.
"Address, c/o Council Bluffs, Iowa."

(6) That on May 2 and May 14, 1888, the defendant wrote letters to the plaintiff, affirming that it would not receive the machines ordered.

(7) That the plaintiff company proceeded with the manufacture of the machines, and within a reasonable time, to wit, on June 4, 1888, notified the defendant that the machines were ready for shipment, and in reply the defendant refused to accept the same.

(8) The usual price at which the plaintiff company sold No. 2 corn cookers, with feeder attached, in April, 1888, was $500 for each machine. The actual cost of manufacture was $135 for each cooker and $30 for each feeder. It does not appear that there has since been any change in the price or salability of the feeder and cooker.

(9) The plaintiff company still has in its possession the machines and feeders, having made no efforts to sell the same.

(10) The cookers and feeders were not specially designed for the building or use of the defendant, but are of the usual make for sale to purchase at baye.

Harl & McCabe, for plaintiff.
Wright & Baldwin, for defendant.

SHIRAS, District Judge (after stating the facts). It clearly appears from the evidence in this case that when the written contract for the sale of the corn cookers and feeders was entered into, on the 21st of April, 1888, the machines were not in existence, and were not ready for delivery. The contract, therefore, was an executory one, having relation to articles to be thereafter manufactured by the plaintiff company; and the title thereto, during the process of manufacturing, remained in the plaintiff, and has not since been trans-

ferred to the defendant. It no less clearly appears that there has been a breach of contract on part of the defendant company, in that on the 25th of April, 1888, it notified the plaintiff that it would not receive the machines, as it had contracted to do, nor pay for the same. The only question in dispute between the parties is as to the rule of damages applicable to the case. When notified, on the 25th of April, that the defendant company would not fulfill the contract on its part, it was open to the plaintiff to countermand the orders it had given for the manufacture of the separate parts of the machine, and the costs and expense resulting therefrom would have been recoverable against the defendant. Instead of so doing, the plaintiff completed the manufacture of the machines. When completed, the defendant still refused to receive them, and the machines remained in the possession of the plaintiff. The title and possession of the property are therefore in the plaintiff, never in fact having passed to the defendant, and the only question in dispute is as to the damages recoverable under these circumstances.

The usual rule in regard to executory contracts is that a vendor who retains the property is entitled to the difference between the contract price and the market value of the articles. It does not appear from the evidence that there has been any change in the price at which the manufactured articles are sold in the market by the plaintiff since the 21st of April, 1888; and, as the burden is on the plaintiff to prove the damage sustained, the court cannot assume that the property has at any time since April, 1888, been of any value less than the contract price, which the evidence shows was the usual price for which the plaintiff company sold the articles in question. If this case, therefore, is governed by the usual rule applicable to executory contracts, where the title and possession of the property never passed from the vendor, it must follow that all the plaintiff can recover is merely nominal damages. It is, however, urged on behalf of the plaintiff that the facts of this case are peculiar, and take the same out of the reason of the ordinary rule, which is based upon the assumption that the property can be sold in the market for its value, and therefore the vendor can in this way protect himself from loss up to the salable value of the property, and is only damaged by the failure of the vendors to the extent of the difference, if any, between the market value and the contract price. It is sought to except this case from the general rule upon the theory that, as the articles agreed to be sold are covered by a patent owned by the plaintiff company, all purchasers thereof must buy from the plaintiff, thereby giving it the profit upon each sale made, and, if the plaintiff is required to sell the article made for defendant, it would thereby be deprived of the profit of the sale which it could make to the second buyer of another set of the patented articles. Although there is much plausibility in the position taken, it would have more force if it were true that the only corn cookers in use in the canning of corn were the kind made by the plaintiff company. There are, however, other machines used for the same purpose, and it cannot be certainly known whether the person who might wish to purchase such machines, if he did not buy those manufactured for the defendant

company, would purchase a set of the plaintiff's manufacture, or a set of a rival in the trade. Furthermore, if the defendant should be· compelled to pay the contract price for the machines, then the same would rightfully become the property of defendant, and in that event the latter company would then have the right to sell these machines to any third party, and the plaintiff could not object thereto on the ground that by such sale it would lose the profit it might have made by an independent sale to such third party. As the plaintiff could not deprive the defendant of the right to resell the machines if they became the property of the defendant by the payment of the purchase price, it cannot rightfully refuse to account for the market value of the articles, when the title and the possession thereof remain in it, and hence there is nothing in the facts of the case which takes it out of the general rule already stated. The facts of the case show a breach of contract on part of the defendant, but fail to show any actual damages, beyond a nominal amount, and the judgment will therefore be for the plaintiff for the sum of one dollar, without costs.